**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENRIQUE HUAPAYA,<br><br>        Plaintiff,<br><br>    v.<br><br>D. DAVEY, et al.,<br><br>        Defendants. | Case No. 1:17-cv-01441-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 46] |

Plaintiff Enrique Huapaya is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed June 27, 2019.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants K. Witt, Satterfield, Pauk, and Ratcliff for separate acts of retaliation and violation of the California Bane Act and against Defendants Piscotta and Witt for violation of the Equal Protection Clause.

Defendants filed an answer to the complaint on December 5, 2018.

After an unsuccessful settlement conference on February 12, 2019, the Court issued the discovery and scheduling order on February 13, 2019.

As previously stated, on June 27, 2019, Defendants filed a motion for summary judgment.

1

Plaintiff filed an opposition on August 5, 2019, and Defendants filed a reply on August 9, 2019. Therefore, Defendants' motion is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

///

///

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### III.

### DISCUSSION

### A. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state

3

prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

### B. Allegations of Complaint

On January 8, 2016, Defendant Pisciotta denied Plaintiff from attending Jumah services, despite the fact that Plaintiff had a proper assignment ducat to attend the religious services. Plaintiff is a White male and is Muslim. Jumah services are Muslim services and those services are usually comprised of all African American inmates. Plaintiff believes that Pisciotta denied him access to the Jumah services because of Plaintiff's race. Pisciotta became verbally aggressive when Plaintiff communicated the Department Operational Procedure relevant to religious services. Based on Defendant Pisciotta's statement and demeanor Plaintiff believed he intended to physically harm him. Pisciotta stated in a loud threatening voice, "I don't give a (expletive) what the DOM says, you're not coming in these gates!" "Besides you're WHITE anyway so how are you even Muslim?" Plaintiff views the act of Pisciotta as an equal protection violation.

On January 29, 2016, Plaintiff was again attempting to gain access to Jumah services but he was ordered to stop by Defendant Witt for physical inspection. Witt inspected Plaintiff and stated, "Pull up your pants you're not Black!" Plaintiff complied with the order but felt humiliated.

Defendant Witt then stated, "Wow cool teeth too, confused?" "You're not Black dude … sagging with gold teeth and you think you're Muslim! You're not Black! You're White due!" Plaintiff ignored Witt's comments and attempted to enter the gate to go to Jumah services, but Witt stated, "Where are [you] going?" Plaintiff responded "to Jumah services." Witt stated, "not without boots White boy!" Plaintiff quoted the DOM and informed Defendant Witt of the procedural standards and the pending grievance he filed regarding Defendant Pisciotta. Defendant Witt stated, "I don't give a (expletive) what the DOM or the (expletive) lieutenant says, you wanna be a terrorist, get your (expletive) boots or you ain't coming on my Plaza!" Plaintiff believes Defendant Witt's actions violate his equal protection rights, retaliation, and the Bane Act.

On March 3, 2016, Defendants Satterfield and Pauk stopped Plaintiff and strip-searched him in front of many other inmates and staff, stating they were performing a "tattoo check." However, the search was only conducted on Plaintiff. The retaliatory statements made by Defendants Sattterfield and Pauk indicated that the retaliatory actions would increase if Plaintiff did not drop his grievances against Defendants Pisciotta and Witt. Defendant Satterfield stated, "it only gets worse!"

On March 27, 2016, Plaintiff was asked by Defendant Ratcliff about the grievance he filed against the other Defendants. When Plaintiff refused to discuss the grievances, Defendant Ratcliff conducted a retaliatory search of Plaintiff's living quarters.

### C. Defendants' Request for Judicial Notice

Defendants request the Court to take judicial notice of the declaration of Tanisha Worthy, Senior Legal Analyst, regarding the records of the Government Claims Program with respect to Plaintiff's allegations in this action. (ECF No. 47, Req. for Judicial Notice [RJN], Ex. A.)

Federal Rule of Evidence 201 permits the Court to take judicial notice at any time. A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources who accuracy reasonably cannot be questioned. Fed. R. Evid. 201(b). Courts may take judicial notice of facts related to the case before it. Amphibious Partners, LLC v. Redman, 534 F.3d 1357, 1361-1362 (10th Cir. 2008) (district court was entitled to take judicial notice of its memorandum of order and judgment from previous case involving same parties).

This Court may judicially notice the records and filing of other court proceedings. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); <u>Bennett v. Medtronic, Inc.</u>, 285 F.3d 801, 802 n.2 (9th Cir. 2002). This includes documents filed in state courts. <u>Harris v. Cnty. of Orange</u>, 682 F.3d 1126, 1132 (9th Cir. 2012).

Because the Court may take judicial notice of public records, including duly recorded documents under Rule 201(b)(2), Defendant's request to take judicial notice of Exhibit A is granted.

**D. Statement of Undisputed Facts**

1. At all relevant times in the complaint, Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR). (Sec. Am. Compl., ECF No. 21.)

2. On January 11, 2016, Plaintiff submitted an inmate grievance (CDCR Form 602), log no. SCC-16-00073, alleging that Defendant Pisciotta prevented him from attending Jumu'ah services on January 8, 2016. (Declaration of T. Ramos ["Ramos Decl."], Ex. B at 3, ECF No. 46-4.)

3. On January 27, 2016, the first level of review partially granted SCC-16-00073 while denying Plaintiff's claim that Defendant Pisciotta committed any wrongdoing. (Ramos Decl., Ex. B at 15-17.)

4. On February 26, 2016, Plaintiff submitted SCC-16-00073 to the second level of review. (Ramos Decl., Ex. B at 8.)

5. On April 6, 2016, the second level of review partially granted SCC-16-00073 while denying Plaintiff's claim that Defendant Pisciotta committed any wrongdoing. (Ramos Decl., Ex. B at 11-12.)

6. On April 18, 2016, Plaintiff submitted SCC-16-00073 to the third level of review. (Ramos Decl., Ex. B at 4.)

7. On July 6, 2016, SCC-16-00073 was denied at the third level of review, exhausting Plaintiff's administrative remedies as to his claims against Defendant Pisciotta. (Ramos Decl., Ex. B at 1-2.)

8. On February 10, 2016, Plaintiff submitted an inmate grievance (CDCR Form 602), log no. SCC-16-00260, alleging that Defendant Witt prevented him from attending Jumu'ah services on January 29, 2016. (Ramos Decl., Ex. C at 3.)

9. On February 26, 2016, the second level of review partially granted SCC-16-00260 while denying Plaintiff's claim that Defendant Witt committed any wrongdoing. (Ramos Decl., Ex. C at 13-14.)

10. On March 21, 2016, Plaintiff submitted SCC-16-00260 to the third level of review. (Ramos Decl., Ex C at 4.)

11. On June 30, 2016, SCC-16-00260 was denied at the third level of review, exhausting Plaintiff's administrative remedies as to his claims against Defendant Witt. (Ramos Decl., Ex. C at 1-2.)

12. Plaintiff has submitted no grievances alleging misconduct by Defendant Paugh that have been accepted for review at the third level. (Ramos Decl. ¶ 6.)

13. Plaintiff has submitted no grievances alleging misconduct by Defendant Satterfield that have been accepted for review at the third level. (Ramos Decl. ¶ 6.)

14. Plaintiff has submitted no inmate grievances alleging misconduct by Defendant Radcliffe that have been accepted for review at the third level. (Ramos Decl. ¶ 6.)

15. Aside from SCC-16-00073 and SCC-16-00260, Plaintiff has never submitted any inmate grievances to the third level of review. (Ramos Decl. ¶ 6.)

16. On November 10, 2016, Plaintiff submitted a claim to the California Government Claims Board alleging constitutional violations and retaliation on the part of Defendants Pisciotta, Witt, Satterfield, and Paugh. (RJN, Ex. A at 2-13.)

17. Plaintiff's November 10, 2016 claim failed to explain why it was submitted more than six months after his claims arose. (RJN, Ex. A at 2-13.)

18. Plaintiff's November 10, 2016 claim did not include a request to file a late claim. (RJN, Ex. A at 2-13.)

19. Because Plaintiff's November 10, 2016 claim was untimely, the Government Claims Board did not issue any rejection letter or otherwise consider the claim. (RJN, Ex. A at 2-13.)

20. The Government Claims Board has no records of any valid, accepted claim submitted by Plaintiff regarding this lawsuit. (RJN, Ex. A.)

**E. Analysis of Defendants' Motion**

Defendants argue that Plaintiff filed an administrative appeal against Defendants Pisciotta and Witt in this case, but he never submitted any grievance regarding the remaining Defendants and their alleged actions. Therefore, Plaintiff did not exhaust his claims against Defendants Paugh, Satterfield, and Radcliffe. In addition, Defendants argue that Plaintiff failed to comply with the California Government Claims Act with regard to his Bane Act claim.

1. Exhaustion as to Defendants Paugh, Satterfield and Radcliffe

This action proceeds on Plaintiff's claim that Defendants Satterfield and Paugh conducted an unclothed body search of his person on March 3, 2016, in retaliation for his grievances against Defendants Pisciotta and Witt. The action also proceeds on Plaintiff's claim that Defendant Radcliffe conducted a retaliatory search of his living quarters on March 27, 2016, to punish him for filing grievances against Defendants Pisciotta and Witt. For the reasons explained below, neither of the two grievances Plaintiff filed to the third level of review involved the distinct and separate retaliation claims against Defendants Satterfield, Paugh, and Radcliffe.

a. Appeal Log No. SCC-16-00073

On January 11, 2016, Plaintiff submitted Appeal Log No. SCC-16-00073 related to his claims against Defendant Pisciotta. In this appeal, Plaintiff alleged as follows:

> I allege Staff Misconduct as a result of Blatant Disregard of a lawful instruction or refusal to act as lawfully directed by a supervisor or high ranking official. The circumstances are as follows: On 1/8/16 I was released to Jumu'ah Services at approximately 1245 hrs (yard release). I approached the FACILITY C PLAZA AREA where I was stopped by C/O Pisciotta (2/W Plaza Officer) & asked where I was going. I replied to "RELIGIOUS SERVICES" C/O Pisciotta responded, "Go get your boots-can't be on the plaza with personal tennis shoes." I then explained that I was in compliance with the DOM (52020.7) in that I was not on my work hours & allowed to wear personal shoes, C/O Pisciotta contemptuously stated, "I don't give a shit what the DOM says-go change your shoes!" Please note that there were other C/O's present who failed to intervene this action of insubordination. I went on to explain that I wouldn't be allowed into housing unit (H/U) 1 until the 2pm unlock, with indifference, C/O Pisciotta stated, "You cant be on the Plaza with personal shoe[s]!" I then made an effort to return to H/U 1 at 12:54pm (see Facility C Video Footage), I was not permitted to change my shoes! It should be noted that Jumu'ah Services conclude at 1345hrs. As a result of C/O Pisciotta's willful & intentional deviation of an established standing policy & unprofessional behavior, I was effectively DENIED religious services, a direct violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 U.S.C. [§ 2000cc]. C/O Pisciotta's length

of service, experience and the knowledge of the above-mentioned D.O.M he should have been aware that his actions were inappropriate.

It should be noted that C/O Pisciotta failed to investigate my claim, even while there were other staff present. The language in the D.O.M with respect to the FACILITY C PLAZA AREA is quite clear & authorized by a High Ranking Official, thus policy.

(Ramos Decl., Ex. B.) The appeal was ultimately denied at the third level of review on July 6, 2016. (Id.)

        b.      <u>Appeal Log No. SCC-16-00260</u>

Plaintiff also submitted an appeal related to his claims against Defendant Witt on February 10, 2016. In this appeal, Plaintiff alleged as follows:

This appeal concerns employee misconduct by Correctional Officer K. Witt for religious discrimination and denial of Religious Rights. Specifically on January 29, 2016, at approximately 1230hrs, I attempted to report to the Facility C chapel for weekly Jumu'ah Prayer services. However, Officer Witt instructed me to leave the Plaza because I did not have state-issued boots on. As a result of Witt's actions, I was not able to properly attend Jumu'ah services. Furthermore, Officer Witt's actions were not legally authorized. On December 1, 2015, Warden Martinez issued S.C.C. D.O.M Supplemental, Section 52020.4.1, titled "Inmate Count and Movement." On page 8 of the D.O.M supp. section 52020.4.1, "Facility C Plaza Area," Warden Martinez states: "Personal Tennis Shoes and personal head gear (NO wave caps) WILL be allowed for inmates not reporting to a work/education assignment." Given this policy, it is clear that C/O Witt did not have a legitimate penological interest in denying me access to the chapel for Religious Services. This further demonstrates that C/O Witt was negligent as a matter of law.

(Ramos Decl. Ex. C.) The appeal was ultimately denied at the third level of review on June 30, 2016. (Id.)

Although both appeals were exhausted through the third level of review, neither of the appeals included the allegations that Defendants Satterfield and Paugh conducted an unclothed body search of his person on March 3, 2016, in retaliation for his grievances against Defendants Pisciotta and Witt, or that Satterfield and Paugh conducted an unclothed body search of his person on March 3, 2016, in retaliation for his grievances against Defendants Pisciotta and Witt Plaintiff did not submit any other appeals to the third level of review. Accordingly, Defendants have met their initial burden of proof in demonstrating that Plaintiff failed to exhaust the administrative remedies as to his claims against Defendants Paugh, Satterfield, and Radcliffe. The burden now shifts to Plaintiff "to come forward

9

with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino v. Baca, 747 F.3d at 1166.

In his opposition, Plaintiff concedes that he did not "file/exhaust any 'grievance' to Defendants Satterfield, Paugh and Radcliffe . . . because of fear of retaliation by the Defendants continual pattern of misconduct." (ECF No. 50 at 11, 15.) Plaintiff further argues that he provided notice to the Defendants by way of filing the Government Claims form. (Id. at 14.)

With regard to Plaintiff's claim that he feared retaliation, he must establish that (1) "he actually believed prison officials would retaliate against him if he filed a grievance'" and (2) "a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." Rodriguez v. County of Los Angeles, 891 F.3d 776, 792 (9th Cir. 2018) (citing McBride v. Lopez, 807 F.3d 982 (9th Cir. 2015)). If Plaintiff alleges "only general and unsubstantiated fears about possible retaliation," his failure to exhaust is not excused. Id. at 794.

Plaintiff has failed to submit evidence to support a finding that he "actually believed prison officials would retaliate against him if he filed [or attempted to exhaust] a grievance." McBride, 807 F.3d at 987. In addition, Plaintiff's allegations are belied by the evidence in the record. Plaintiff continued to pursue both of his grievances against Defendants Witt and Pisciotta through the third level of review, which demonstrates that the grievance process remained available to him. Accordingly, Plaintiff has failed to demonstrate that any feared retaliation excused him from exhausting the administrative remedies.

Plaintiff's argument that he exhausted the administrative remedies by providing notice to Defendants Satterfield, Paugh, and Radcliffe in the filing of the Government Claim form, is without merit. "Plaintiff's obligation to exhaust the administrative remedies available to prisoners . . . is independent of the obligation to comply with the Government Claims Act." Parthemore v. Col., 221 Cal.App.4th 1372, 1376 (Cal. Ct. App. 2013); see also Martinez v. Tilton, No. 1:10-cv-01501-SKO PC, 2013 WL 5670869, at *3 (E.D. Cal. 2013) ("the prisoner' inmate appeals process and the

Government Claims Act process are separate processes and there is no support for a finding that the allegedly improper cancellation of Plaintiff's inmate appeal had any effect whatsoever on his ability to timely present his Government Claims Act claim."). Accordingly, the filing of a Government Claim did not exhaust the administrative remedies as to Defendants Satterfield, Paugh, and Radcliffe.

2. California Bane Act Claims

The Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues.[1] Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950, 950.2 (West 2011). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Government Claims Act. Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1239; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

A cause of action against a public employee for injury resulting from an act or omission in the scope of employment is barred if an action against the employing public entity would have been barred because of the plaintiff's failure to present a written claim or failure to commence the action within the time specified in Government Code section 945.6. Cal. Gov't Code § 950.2.

The Board has forty-five days to act on a claim, or an application for leave to file a late claim; and absent an extension by agreement, if the board fails to act within forty-five days, the claim is deemed rejected, or the application is deemed denied, on the last day of the prescribed period. Cal. Gov't Code §§ 911.6, 912.4. If an application for leave to file a late claim is denied, the claimant may petition the court for an order relieving him from section 945.4. Cal. Gov't Code § 946.6.

---

[1] Formerly known as the California Tort Claims Act. City of Stockton v. Superior Court, 42 Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

Once rejected, the suit must be commenced within six months "after the date such notice is personally delivered or deposited in the mail." Cal. Gov't Code § 945.6, subd. (a)(1). "The plain meaning of section 945.6, subdivision (a)(1), is that the statute of limitations therein begins to run when the written rejection notice is deposited in the mail to the claimant, or is personally delivered, but not when it is delivered by the postal employee after having been deposited in the mail pursuant to section 913." Edington v. County of San Diego, 118 Cal.App.3d 39, 46 (1981). Even substantial compliance with this requirement does not excuse the late filing of the government claim. Hunter v. Los Angeles County, 262 Cal.App.2d 820, 822 (1968). The six-month statute of limitations cannot be extended by any provision outside of the Act. Martell v. Antelope Valley Hosp. Medical Center, 67 Cal.App.4th 978, 982 (1998) (emphasis added). Compliance with the claims statutes is mandatory. Farrell v. County of Placer, 23 Cal.2d 624, 630 (1944).

On November 10, 2016, Plaintiff submitted a claim to the California Government Claims Board alleging constitutional violations and retaliation by Defendants Pisciotta, Witt, Satterfield, and Paugh. (RJN, Ex. A at 2-13.) Plaintiff's claim did not explain why it was submitted more than six months after his claims arose, nor did it include a request to file a late claim.

Here, Plaintiff was required to file a written claim within six months of each of the incidents alleged in the complaint, i.e. six months from January 8, 2016, January 29, 2016, March 3, 2016, and March 27, 2016-the dates of each incidents. However, Plaintiff did not file his claim until November 10, 2016 (Claim No. 16009187), which is untimely. Therefore, the Board implicitly rejected the claim by failing to respond to it within forty-five days. Cal. Gov't Code §§ 911.6, 912.4. Compliance with section 945.6 is a condition precedent to suit and the failure to comply bars this action for money damages. Because Plaintiff's claim was filed late, he has not satisfied the requirement of section 945.6, and he cannot proceed with his California Bane Act claim.

In his opposition, Plaintiff claims that he filed a timely claim under the Act, and attaches a denial letter in support thereof. However, Plaintiff attaches a different and unrelated Government Claims Form which was received on November 28, 2016 and assigned Claim No. 16008733. (ECF No. 50 at A2; see also ECF No. 47 at 38.) The issue in Claim No. 16008733 involved an incident that took place on February 26, 2016, at California Correctional Health Care Services. Thus, this claim

involved a different incident at a different institution, which is not relevant to the instant action. Accordingly, Plaintiff's state law claims should be dismissed.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendants' motion for summary judgment be granted; and
2. The claims against Defendants Satterfield, Paugh, and Radcliffe be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __August 26, 2019__

UNITED STATES MAGISTRATE JUDGE